UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH J. BAUWENS,<br>JACK BLOCK,<br>BRIAN BROWN,<br>KEVIN CONNOLLY,<br>JOHN P. DALTON,<br>I. STEVEN DIAMOND,<br>DONALD FINN,<br>CHRISTOPHER N. MCCORMICK,<br>KEVIN O'SHEA,<br>and MICHAEL L. WALSDORF,<br>as the ELECTRICAL INSURANCE TRUSTEES,<br><br>      Plaintiffs,<br><br>  v.<br><br>WIGDAHL ELECTRIC COMPANY,<br><br>      Defendant. | No. |

## COMPLAINT

The plaintiffs, KENNETH J. BAUWENS, JACK BLOCK, BRIAN BROWN, KEVIN CONNOLLY, JOHN P. DALTON, KENNETH J. BAUWENS, I. STEVEN DIAMOND, DONALD FINN, CHRISTOPHER N. MCCORMICK, KEVIN O'SHEA, and MICHAEL L. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES (the "Trustees"), by their attorney, David R. Shannon, for their complaint against the defendant, WIGDAHL ELECTRIC COMPANY ("Wigdahl"), state:

    1.    This action arises under the Labor-Management Relations Act, as amended (29 U.S.C. § 141 et seq.), and the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.). Jurisdiction is founded on the existence of questions arising thereunder.

    2.    Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1132(e)(2) by virtue of the fact that the Trustees' administrative offices are located in Chicago, Illinois.

    3.    The plaintiffs are the duly appointed and acting trustees under an agreement originally entered into on June 24, 1930, between the Electrical Contractors' Association of City of Chicago

("ECA") and Local 134, International Brotherhood of Electrical Workers, and are known as the Electrical Insurance Trustees.

4. Wigdahl is an electrical contractor which signed a Letter of Assent effective April 7, 1994, and thereby agreed to the terms of a collective-bargaining agreement entered into between the ECA and Local 134, "The Principal Agreement by and between the Electrical Contractors' Association of City of Chicago and Local Union No. 134 International Brotherhood of Electrical Workers" (the "Principal Agreement"). A copy of the Letter of Assent is attached hereto as Exhibit A.

5. Under the Principal Agreement, Wigdahl agreed to pay certain wage rates and, in addition, to file a monthly report with and make a monthly contribution to the Trustees to cover certain fringe benefits. Excerpts of the Principal Agreement, including Article XVII (Wage and Fringe Benefit Checks - Delinquency Collection Policy), are attached hereto as Exhibit B. The Delinquency Collection Policy describes the payroll audit procedure and the Trustees' remedies for delinquent contributions, and it provides for liquidated damages, interest, and attorneys' fees.

6. Wigdahl signed a Letter of Assent effective December 8, 1995, and thereby agreed to the terms of a collective-bargaining agreement entered into between the ECA and Local 134 called the "Communication Agreement." A copy of the Letter of Assent is attached hereto as Exhibit C.

7. Under the Communication Agreement, Wigdahl agreed to pay certain wage rates and, in addition, to file a monthly report with and make a monthly contribution to the Trustees to cover certain fringe benefits. Excerpts of the Communication Agreement, including Article XVIII (Wage and Fringe Benefit Checks - Delinquency Collection Policy), are attached hereto as Exhibit D.

8. Section 16.01 of the Principal Agreement provides:

> The Employer shall furnish two bonds, each with corporate surety, one to guarantee the payment of wages and working dues with the Union as "obligee" and the other to guarantee the payment of fringe benefit contributions with the Electrical Insurance Trustees as "obligee." The wage bond shall be on a standard form provided by the Union (an example is included in Appendix A of this Agreement); the fringe benefit bond shall be on a standard form provided by the Electrical Insurance Trustees (an example is included in Appendix B of this Agreement). The penal sum for contributions payable to the Electrical Insurance Trustees as obligee shall be Ten

Thousand Dollars and 00/100 ($10,000) for each covered Employee of the Employer for all fringe benefit contributions to the obligee and any liquidated damages assessed thereon. The wage bond shall provide for full payment of wages to a maximum of four weeks of wages and working dues.

9. Section 17.01 of the Communication Agreement provides:

The Company shall furnish two bonds, each with corporate surety, one to guarantee the payment of wages with the Union as "obligee" and the other to guarantee the payment of fringe benefit contributions with the Electrical Insurance Trustees as "obligee." The wage bond shall be on a standard form provided by the Union (an example is included in Appendix "J" of this Agreement). The fringe benefit bond shall be on a standard form provided by the Electrical Insurance Trustees (an example is included in Appendix "K" of this Agreement). The Company and the surety licensed to transact business in Illinois, herein called the "Surety," are hereby bound unto the Electrical Insurance Trustees, as Obligee, in the penal sum of (1) Seven Thousand Five Hundred dollars and 00/100 ($7500) for each covered employee of the Company for all fringe benefit contributions to the Obligee and any liquidated damages assessed thereon and (2) Three Thousand and 00/100 ($3000) for contributions to the National Electrical Benefit Fund (NEBF) and any liquidated damages assessed thereon. The wage bond shall provide for full payment of net wages to a maximum of four (4) weeks of wages and working dues. There shall be no deductible on either bond.

10. Section (g)(1) of Article First of the insurance trust agreement ("Insurance Agreement") pursuant to which the plaintiffs are appointed trustees and which describes the duties and responsibilities of the Trustees provides as follows:

The Trustees shall have plenary power to make, from time to time, and to enforce such rules and regulations for the determination of eligibility for benefits, for the proper collection and handling of said Fund, for the allocation of benefits to those eligible for it, for the determination of who may be beneficiaries and the terms and conditions under which benefits shall be given to the beneficiaries and forfeited by them, and for the determination of methods of procedure and every other question (irrespective of its nature) arising in the collection and administration of said Fund, and generally in the carrying out of this Agreement, and in fully and completely accomplishing its purpose.

11. Section (g)(2) of Article First Insurance Agreement provides as follows:

"Each employer shall make continuing, prompt and proper payments to the Trust Fund in such amounts as shall have been agreed upon in writing from time to time, together with such amounts as may be provided for as liquidated damages with respect to delinquent accounts."

12. Section (g)(3) of Article First of the Insurance Agreement provides in part as follows:

"The Trustees, in their fiduciary capacities, shall have the power to demand and collect the contributions of the Employers to the Fund* * *. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest at the rate of 6% per annum on the moneys due to the Trustees from the date

when the payment was due to the date when payment is made, together with all expenses of collection incurred by the Trustees."

13. Section (g)(5) Article First of the Insurance Agreement provides in part as follows:

"Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their Social Security numbers, the hours worked by each employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust."

14. Section (o) of Article First of the Insurance Agreement provides:

"To the fullest extent permitted by federal law, the Trustees shall have the discretionary authority to determine all questions arising in connection with the Trust Fund ... or as to the construction of the language or meaning of ... this instrument or as to any writing in connection with the operation of the Trust Fund or otherwise and the decision of a majority of the Board of Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefits thereunder...."

15. Wigdahl has failed to submit payroll reports or make fringe benefit contributions for the months of April through June 2018.

16. On or about June 12, 2018, the Trustees received notice that Wigdahl's surety, Benefit Security Insurance Company, through its agent, C.W. & Olson & Co., Inc., intended to cancel Wigdahl's fringe-benefit bonds, which the surety issued to cover Wigdahl's obligations under the Principal Agreement and under the Communication Agreement, effective July 12, 2018. A copy of the letters are attached hereto as Exhibit E.

17. Wigdahl has failed to provide a fringe-benefit bond to replace the bond canceled by Great American Insurance Group.

18. Wigdahl may be performing work within the scope of work clause of the Principal Agreement or the Communication Agreement, and within the jurisdiction of Local 134, despite the breach of its obligation to provide valid fringe benefit bonds to the Trustees.

19. The Trustees' pension obligations to plan participants and beneficiaries are based on the terms of the plans and are independent of employers' obligations to fund the plans. However, the actuarial calculations which determine the amount of the fringe benefit contributions are based

on an assumption that participating employers will report all covered work and pay contributions for all hours of bargaining unit work. If some employers do not contribute, the Trustees will be required to provide some benefits without having received corresponding contributions. If that occurs, the shortfall must be made up by decreasing the amount of benefits for all participants or increasing the contributions rate for other employers.

20. The Trustees will suffer irreparable harm by incurring unfunded liabilities which would jeopardize the actuarial soundness of the funds which the Trustees administer if Wigdahl fails to submit contributions. The Trustees must provide pension credits for all hours worked by Wigdahl's electricians regardless of whether Wigdahl honors its obligation to pay contributions to the Trustees. The plan participants are employees of Wigdahl and their dependents could suffer irreparable harm from a suspension of health and welfare benefits while contributions remain unpaid without back-up security.

21. The Trustees have a fiduciary duty under ERISA to use all reasonable means to ensure the collection of fringe benefit contributions due under the Principal Agreement in order to maintain the financial health of the plans they administer.

22. Wigdahl should be enjoined from performing bargaining unit work in the jurisdiction of Local 134 in order to minimize the amount of unfunded liabilities which the Trustees will incur.

23. The Trustees' legal remedy -- a money judgment -- is inadequate because Wigdahl may be insolvent. The Trustees may be unable to collect a money judgment, they are entitled to the security of a bond if Wigdahl is the subject of insolvency proceedings, and they should not have to assume the risk that Wigdahl will default on its obligations and leave the Trustees without an effective remedy.

24. It is more than likely that the Trustees will prevail on the merits. The furnishing of a fringe benefit bond is an absolute requirement under the Principal Agreement and the Communication Agreement.

25. Ordering Wigdahl to furnish a fringe-benefit bond would not impose a hardship on Wigdahl but would only require Wigdahl to honor its contractual obligation to provide security to the Trustees and their plan participants and beneficiaries.

The plaintiffs, KENNETH J. BAUWENS, JACK BLOCK, BRIAN BROWN, KEVIN CONNOLLY, JOHN P. DALTON, KENNETH J. BAUWENS, I. STEVEN DIAMOND, DONALD FINN, CHRISTOPHER N. MCCORMICK, KEVIN O'SHEA, and MICHAEL L. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, request the court to: (1) enter an order directing WIGDAHL ELECTRIC COMPANY to produce its books and records so that the Trustees can conduct an audit and determine the amount of fringe-benefit contributions due; (2) enter a judgment in favor of the Trustees and against WIGDAHL ELECTRIC COMPANY for the amount of delinquent fringe-benefit contributions, together with liquidated damages, interest and costs of collection, including attorneys' fees; (3) enter an order directing WIGDAHL ELECTRIC COMPANY to place a cash deposit with the Trustees in accordance with Section 17.01(h) of the Principal Agreement and Section 18.01(h) of the Communication Agreement; and (4) enter an order enjoining WIGDAHL ELECTRIC COMPANY from continuing to engage in work within the scope of work clause in the Principal Agreement or the Communication Agreement and within the jurisdiction of Local 134, I.B.E.W., for so long as it is a signatory of that agreement, unless and until it furnishes the Trustees with a duly-executed standard fringe-benefit bond. The Trustees also request the Court to grant such other legal or equitable relief as the Court deems appropriate.

                            KENNETH J. BAUWENS, et al., as the
                            ELECTRICAL INSURANCE TRUSTEES

                            /s/ David R. Shannon
                        By: _____
                            One of Their Attorneys

David R. Shannon
Tenney & Bentley, LLC
111 West Washington Street
Suite 1900
Chicago, Illinois 60602
(312) 407-7800